

IN THE UNITED STATES DI[STRICT COURT]
FOR THE NORTHERN DIST[RICT OF TEXAS]
DALLAS DIVIS[ION]

| | |
|---|---|
| LYN-LEA TRAVEL CORP. d/b/a FIRST CLASS INTERNATIONAL TRAVEL MANAGEMENT,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC.,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL ACTION NO. 3:96-CV-2068-BC |

## ORDER OF SANCTIONS AGAINST STEPHEN GARDNER

On November 20, 1998, came on for hearing the merits of the contempt issues first raised in Defendants' Motion for Order to Show Cause (the "Contempt Motion"). Defendants appeared and announced that they were ready to proceed. Based upon the representations and claims made by Stephen Gardner, counsel for Plaintiff Lyn-Lea Travel Corp. d/b/a First Class International Travel Management, to the Court at the hearing, the Court finds and concludes as follows:

1. By prior orders dated September 28, 1998 and October 28, 1998, the Court set a hearing on November 20, 1998 (the "Contempt Hearing") on the merits of the allegations contained in the Contempt Motion. In the meantime, to facilitate resolution of the matter and to accommodate counsel for both parties, the Court held several telephonic hearings to consider various matters attendant to the Contempt Hearing, including Plaintiff's argument that the Contempt Motion was not specific enough to afford Plaintiff notice of the issues to be addressed at the Contempt Hearing and Defendants' requests for discovery to gather

evidence for admission at the hearing on the merit of their motion. The Court further advised the parties that the Contempt Hearing would be civil in nature rather than criminal and that the Court did not believe Plaintiff was entitled to court-appointed counsel to represent it at the Contempt Hearing. Based upon the Court's orders and the various discussions between the Court and the parties at the related telephonic hearings, the parties were clearly placed on notice that the Court intended to address the merits of the Contempt Motion at the Contempt Hearing.

2. While Plaintiff's counsel appeared at the Contempt Hearing, Plaintiff's President, Stephen Sedgwick, whose actions were a primary focus of the Contempt Hearing, did not. When questioned regarding his client's absence notwithstanding the Court's prior statement that she wanted to see Mr. Sedgwick and hear from him at the Contempt Hearing, Plaintiff's counsel initially suggested to the Court that Mr. Sedgwick's absence was due to actions taken by American Airlines, Inc. earlier in the week in announcing changes in its commissions to travel agencies, which actions Mr. Gardner represented required Mr. Sedgwick to choose to attend to his business rather than to appear at the contempt matter. Mr. Gardner further advised the Court that Mr. Sedgwick's absence was also due, in part, to Plaintiff's counsel's advice to him that the purpose of the Contempt Hearing was not to address the merits of the Contempt Motion but rather to determine merely whether the Defendants had met their alleged "initial" burden for the issuance of an order to show cause. Mr. Gardner then represented to the Court that he in fact held this belief. Based upon its knowledge of the prior proceedings in this matter and Mr. Gardner's statements and demeanor

before the Court, the Court finds and concludes that Mr. Gardner's assertions as to his belief regarding the nature of the hearing wholly lack credibility.

3. Defense counsel advised the Court that Mr. Sedgwick was questioned at his deposition taken on October 12, 1998, regarding whether he was planning on attending the Contempt Hearing and that Mr. Gardner objected to such question but that the indication from Plaintiff was that no plans had then been made for Mr. Sedgwick to attend. Moreover, on November 10, 1998, before American Airlines, Inc. and other airlines announced the subject commission changes said to demand Mr. Sedgwick's attention, Plaintiff had filed its witness list which indicated that Mr. Sedgwick would be a "probable witness by deposition." These actions indicate to the Court that the decision for Mr. Sedgwick not to attend the Contempt Hearing had been at least considered, if not made, before the event offered by Plaintiff as an excuse for Mr. Sedgwick's absence.

4. Based upon the above cited actions taken in the Court's presence, the Court finds and concludes that Mr. Gardner has unreasonably and vexatiously multiplied the contempt proceedings by coming to the Contempt Hearing and claiming not to understand its purpose, by failing to be properly prepared to address the merits of the contempt allegations by having his client present, and through such actions, by placing the Court in a position to be concerned about a later, groundless appeal regarding such matters. The Court further finds that such actions by Mr. Gardner were in bad faith and taken in reckless disregard for his duties as an officer of the Court. In light of the foregoing conduct and to foreclose any future groundless assertions of Mr. Gardner or Plaintiff herein as to what did or did not transpire in

telephonic conferences between Court and counsel prior to the Contempt Hearing, the Court determined to enter a written order to show cause, to reset the hearing at 9:00 a.m. on December 2, 1998, and to order that both Mr. Gardner and Mr. Sedgwick appear in person at such hearing.

5. Accordingly, the Court finds that sanctions against Mr. Gardner are warranted under 28 U.S.C. § 1927 (West 1994). See also Baulch v. Johns, 70 F.3d 813, 816-17 (5th Cir. 1995) and F.D.I.C. v. Calhoun, 34 F.3d 1291, 1296 (5th Cir. 1994). Mr. Gardner is therefore ordered to pay to Defendants on or before  Dec 31, 1998  the sum of $2047.50, an amount found by the Court to constitute the reasonable excess attorneys' fees incurred by the Defendants because of Mr. Gardner's wrongful conduct.

SIGNED this 30th day of November, 1998.

_____
UNITED STATES MAGISTRATE JUDGE